IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN WOODY, | ) | CASE NO. 3:08CV2534 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| ROBERT WELCH, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Brian Woody's ("Woody") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on October 24, 2008.  Woody is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Woody*, Case No. 04-CR-142 (Ottawa County 2004).  For the reasons set forth below, Woody's petition should be dismissed.

I

The state appellate court hearing Woody's first direct appeal found the following facts to be relevant to Woody's case:

> On June 21, 2004, at approximately 11:45 p.m., a collision occurred on State Route 2 in Ottawa County claiming six lives and injuring four more.  The accident occurred as appellant, westbound on State Route 2, crossed the center line and struck an eastbound tractor trailer truck.  The impact caused the truck to cross the center line into westbound traffic.  The truck struck a glancing blow off a Toyota Corolla and then collided with a Cadillac Escalade head on.  Six of the seven passengers in the Cadillac were killed.  At one point prior to the collision,

> the truck driver believed appellant had driven completely into the eastbound lane, with all four tires across the center line.  Emergency response personnel noticed the smell of alcohol on appellant while attending to him after the collision.  Appellant admitted to having at least two beers earlier in the day.
>
> {¶ 6} On October 22, 2004, an Ottawa County grand jury indicted appellant on 15 counts.  Counts 1 through 6 alleged aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a).  Counts 7 through 12 alleged aggravated vehicular homicide in violation of R.C. 2903.06(A)(2).  Counts 13 and 14 alleged aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a).  Count 15 alleged failure to stop after an accident involving the death of a person in violation of R.C. 2923.02(A).  At a pretrial hearing on January 13, 2005, appellant entered pleas of no contest to counts 7 through 12 and 14.  In exchange, the state dropped the other charges against him.  The trial court continued the matter for sentencing on March 4, 2005.
>
> {¶ 7} The trial court imposed a three-year sentence on each of the aggravated vehicular homicide counts and a one-year sentence on the count of aggravated vehicular assault.  Each sentence was imposed consecutively for a total of 19 years.  The other eight counts were dismissed.

*State v. Woody*, 2006 WL 832910, at *1 (Ohio App. March 24, 2006).

Woody filed a timely notice of appeal.  Woody presented two assignments of error in his appeal:

### Assignment of Error Number One

The trial court erred to the prejudice of Mr. Woody by sentencing him to consecutive, non-minimum sentences in violation of his right to protection from Ex Post Facto sentencing and his right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

### Assignment of Error Number Two

The trial court erred to the prejudice of Mr. Woody and should not have imposed a consecutive sentence of more than minimum time because the record does not support such a sentence.

On March 24, 2006, the state appellate court overruled Woody's first assignment of error but found merit in Woody's second assignment of error.  The appellate court overturned Woody's sentence and remanded the case for resentencing in light of *State*

2

*v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).

The trial court sentenced Woody on April 24, 2006 to the same sentence it had initially imposed. Woody timely filed a notice of appeal and re-asserted the same assignments of error on his second direct appeal as he had asserted on his first appeal. On June 8, 2007, the state appellate court overruled Woody's assignments of error and affirmed the judgment of the trial court.

Woody timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision. In his memorandum in support of jurisdiction, Woody asserted a single proposition of law:

> Proposition of Law: A sentence imposing non-minimum, maximum consecutive sentences for behavior that occurred before February 27, 2006 violates the Due Process and Ex Post Facto Clauses of the United States Constitution.

On October 31, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Woody filed a petition for a writ of habeas corpus in this court on October 24, 2008. Woody's petition asserts one ground for relief:

> Ground 1: The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (Ohio Sup. Ct. 2006) violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

Respondent filed an Answer/Return of Writ on February 23, 2009. Doc. No. 6. Woody filed a Traverse on April 23, 2009. Doc. No. 8. Thus, the petition is ready for decision.

II

A. *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

3

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Woody was convicted in the court of common pleas in Ottawa County, situated in the Northern District of Ohio. At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction. This court has jurisdiction over Woody's petition.

B.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Woody's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.   *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Woody has no remaining state remedies for his claims. Because Woody has no remaining state remedies, his claims are exhausted.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

5

Respondent does not argue that Woody has procedurally defaulted his claim.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

6

*Williams,* 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Woody's grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Woody contends that under Ohio law at the time he committed the crimes of which he was convicted, the trial court was required to sentence him to the minimum sentences in the sentencing range for those crimes and to concurrent sentences. The trial court, however, imposed maximum, consecutive sentences, using the law re-shaped by *Foster*. This, Woody contends, violated his right to due process and his protections against *ex post facto* laws.

Respondent acknowledges that, prior to *Foster,* a trial court was required to

7

sentence a defendant to minimum, concurrent sentences unless it made certain findings of fact of the sort barred by *Blakely v. Washington*, 542 U.S. 296 (2004). In *Foster*, the Ohio Supreme Court overturned Ohio Rev. Code §§ 2929.14(B) & 2929.41(E)(4) as unconstitutional in light of *Blakely*. *Foster* severed these unconstitutional portions of Ohio's sentencing statutes and preserved most of the remainder of the statutes. The Ohio Supreme Court held that the resulting statutes allowed a court to sentence a defendant to any sentence within the sentencing range for a particular offense and to consecutive sentences without making judicial findings of fact prohibited by *Blakely*.

Woody argues that the trial court, in sentencing him to maximum, consecutive sentences using the law re-shaped by *Foster*, violated due process and the *Ex Post Facto* Clause and subjected him to a retroactive law. Woody errs.

"[D]ue process claims . . . may proceed either upon the theory that a deprivation has occurred without procedural due process or that there has been a substantive due process violation. The latter includes conduct that either "shocks the conscience," as in *Rochin v. California,* 342 U.S. 165, 172 (1952), or infringes a specific constitutional guarantee, as in *Monroe v. Pape*, [365 U.S. 167 (1961)]." *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (en banc). Although all violations of the rights explicitly protected by the constitution are also violations of due process, where the constitution "provides an explicit textual source of constitutional protection . . . that [provision], not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims." *Portuondo v. Agard*, 529 U.S. 61, 74 (2000) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). *See also Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1013 (6th Cir. 1999). As the *Ex Post Facto* Clause provides an explicit protection

against the retroactive application of laws, the court will analyze Woody's claim using the *Ex Post Facto* Clause to weigh Woody's arguments.

Article I, § 9 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 9. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964). Such a *post hoc* criminalization of previously-innocent acts fails to give defendants fair warning of the punitive consequences of their behavior. The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause. *Id.* at 458-461.

While the Court held in *Bouie* that a court may not punish a defendant for acts *that were not criminal at the time the defendant performed them, the Court has also held that unconstitutional statutes may nevertheless give a defendant fair warning of the penalties that a state may seek to impose on a defendant. *See Dobbert v. Florida*, 432 U.S. 282 (1977); *United States v. Duncan*, 400 F.3d 1297, 1307-08 (11th Cir. 2006).

9

Thus, although Ohio's sentencing statutes at the time of Woody's criminal acts were, in part, unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Woody was potentially subject, Woody cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts.  *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

Woody asserts that his sentence violates the holding in *Miller v. Florida*, 482 U.S. 423 (1987).  In *Miller*, the Supreme Court found that a defendant sentenced under Florida's revised sentencing statute for criminal acts performed prior to the statute's revision violated the *Ex Post Facto* Clause.  Florida's sentencing statutes assigned points for various offenses and for various factors relevant to those offenses.  A defendant's point score created a presumptive range of sentences.  A judge could sentence a defendant to any term within that range without explanation.  If the judge wanted to depart from that range, however, the statute required the judge to provide a written explanation.  Miller was convicted of a sexual battery at a time when the presumptive range for his acts was 3½ to 4½ years.  The legislature subsequently increased the presumptive range for his acts to 5½ to 7 years.  The sentencing court imposed a 7-year sentence without explanation.  The Supreme Court found that the application of the revised guidelines to Miller violated the *Ex Post Facto* Clause.

Woody's case differs from Miller's in at least one important respect:  The revised statute applied to Miller was a *legislative* enactment.  As previously noted, the *Ex Post Facto* Clause applies to states, which act through their legislatures.  It extends to courts only as far as is determined by the Supreme Court.  While a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction, *see Bouie*, the Supreme Court has never said that retroactively applying a judicial reconstruction of a statute violates the *Ex Post Facto* Clause.  *Miller* and Woody's case do not reach conclusions opposite to one another on materially indistinguishable facts.  It cannot be said on the basis of *Miller*, therefore, that the Ohio courts reached a decision in contrary to federal law as found in a holding of the Supreme Court when they found that Woody's sentence did not violate the *Ex Post Facto* Clause.

In addition, Woody's position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence.  The Court found that such mandatory factfinding violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and excised those portions of the statute requiring judicial factfinding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding-- striking the mandatory findings on Sixth Amendment grounds and using the previously-

11

mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id. at 249*. Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard. *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96. Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences. *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98. It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations. *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498. Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced. The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality. *Id.*

Woody argues that the judicial restructuring in *Foster* differs from the restructuring in *Booker*. Woody asserts that the judicial restructuring in *Booker* permitted appellate review on the grounds of reasonableness because the restructured

12

statute required sentencing courts to state reasons for departing from the previously-mandatory guidelines. *Foster*, however, does not require any judicial explanation for a sentence within a permitted range. Thus, Woody contends, *Foster* eliminated an appellate court's ability to review a sentence effectively. This retroactive abrogation of Woody's appellate rights, according to Woody, distinguishes *Foster* from *Booker* and violates the *Ex Post Facto* Clause.

Ohio Rev. Code § 2953.08(A)(4) ("§ 2953.08(A)(4)") provides in relevant part: "In addition to any other right to appeal . . . a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds: . . . (4) the sentence is contrary to law." Thus, Woody's contention that after *Foster* sentences are effectively unreviewable on appeal is simply wrong.

It is true that the grounds on which a sentence might be appealed in Ohio are more limited after *Foster*. In particular, because a sentencing court is not required to make findings of fact to justify a sentence greater than the minimum within a sentencing range, it is no longer possible to appeal such a sentence on the grounds that the court based a departure from the minimum sentence on a mistake of fact or on factors not authorized by law. To that extent, Woody might argue that the retroactive application of the holding in *Foster* to his case deprived him of an appellate right.

Woody could not obtain habeas relief based on such a claim, however. The Supreme Court has never held that the retroactive application of a judicial reconstruction of a statute violates the *Ex Post Facto* Clause if it results in the loss of a right to appeal a sentence based on a mistake of fact or law. As Woody's sentence was

13

not contrary to a holding of the Supreme Court, it was not contrary to clearly established federal law.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws. Those challenges have been universally rejected. *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343. Woody makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

In sum, the trial court's use of the sentencing statute re-shaped by *Foster* in sentencing Woody did not violate due process or the *Ex Post Facto* Clause of the Constitution. Woody's arguments to the contrary are without merit. For this reason, Woody's sole ground for relief should be dismissed.

### IV. Conclusion

For the foregoing reasons, the court should dismiss Woody's petition.

/s/ *Nancy A. Vecchiarelli*
Date: May 4, 2009                                United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the**

**specified time may waive the right to appeal the District Court's order.  See  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**